FILED
JAMES J. VILT, JR. - CLERK
SEP - 7 2022
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

SUPERSEDING INDICTMENT

v.

NO. 3:22-CR-14-CHB
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)&(b)(1)
18 U.S.C. § 1343
18 U.S.C. § 1349
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(h)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

**ROBERT LOUIS SANCHEZ (1)**
**MARK ANTHONY PHILLIPS (1, 2)**
**TINA SARNOFF (2)**
**CARTER REICH (2)**
**CHRISTOPHER COURCOULACOS (1)**
**PHILLIPE GRAVEL-NADON (1)**
**PANAMA ABEL DIAZ ADAMES (1)**
**JAIRO OSTIA ROBERTS (1)**

The Grand Jury charges:

COUNT 1
(*Conspiracy to Commit Wire Fraud*)

1. Beginning on a date unknown to the grand jury, but from at least in or about August 2020, and continuing through at least in or about May 2021, in the Western District of Kentucky, Hardin County, Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants, **ROBERT LOUIS SANCHEZ**, **PANAMA ABEL DIAZ ADAMES**, **JAIRO OSTIA ROBERTS**, **CHRISTOPHER COURCOULACOS**, **PHILLIPE GRAVEL-NADON**, and **MARK ANTHONY PHILLIPS**, did unlawfully and willfully combine, conspire, confederate, and agree together and with each other, to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

2. It was the object of the conspiracy that the defendants, **ROBERT LOUIS SANCHEZ, PANAMA ABEL DIAZ ADAMES, JAIRO OSTIA ROBERTS, CHRISTOPHER COURCOULACOS, PHILLIPE GRAVEL-NADON**, and **MARK ANTHONY PHILLIPS**, together with others both known and unknown to the Grand Jury ("unindicted co-conspirators"), would fraudulently obtain funds from senior victims by convincing them a grandchild or other family member had an emergency, in the form of a car accident and/or legal trouble, and urgently needed money from the victim. The conspirators would sometimes extract or attempt to extract multiple payments from the same victim through this ruse, falsely claiming the victim's grandchild or family member had additional urgent expenses that arose within the supposed unfolding emergency. The defendants and others worked in concert to organize and carry out this "grandparent scam," in cities across the United States, including in the Western District of Kentucky.

## MANNER AND MEANS

3. The manner and means used to accomplish the objectives of the conspiracy included, among other things, the following:

4. As part of the conspiracy that co-conspirators targeted different geographic regions around the United States at different times, using leads from unknown sources to identify potential elderly victims in those regions. Elderly victims then received phone calls, via interstate wire communications, from scammers pretending to be a family member, typically the grandchild of the victim, and claiming to be in distress. The ruse typically involved a fabricated automobile accident or other legal trouble, supposedly triggering the need for bond money or other emergency

funds. Once ensnared into believing their loved one was in trouble, scam callers would target the same victims again, posing as attorneys or other professionals and direct urgent payments to help the victims' loved ones.

5. The type of "grandparent scam" carried out here is a common type of phone-based scam and perpetrators typically direct their victims to ship cash or other easily liquidated means to a provided address. In this case, it was part of the conspiracy that co-conspirators would travel to the targeted geographic region, which changed from week to week, to collect initial cash payments in person. Victims were told by scammers over the phone that the attorney or other professional would arrange for in-person cash pickup by a bail bondsmen or "courier" in the area. The "couriers" responsible for going to the door to collect the money, would park away from the residence, use an alias, often wear masks (which was not suspicious given COVID-19 safety protocols) and sometimes gloves, and collect the initial cash payments from the victims. Subsequent requests for money were then generally requested via the more typical manner of shipping funds, though sometimes a subsequent cash pickup was arranged. Victims found this scam to be more believable because of the in-person "courier" pick up and "couriers" were able to conceal their identities through masking because of COVID-19 safety protocols.

6. In addition to the "couriers," other money handlers would travel to the targeted area in the same timeframe in order to collect and deposit fraud proceeds, which were then laundered both to conceal the nature, the location, the source, the ownership, or the control of the fraud proceeds. Leading members of the conspiracy would recruit and direct "couriers" to collect cash payments directly from victims, as well as someone acting as a "safehouse" to gather funds from the "couriers" and hold them until the end of the trip. As part of the scheme, each "courier" was allowed to keep a percentage of the fraud proceeds they collected and the person acting as the

"safehouse" was allowed to keep a portion of the proceeds gathered. At the end of each of these trips, targeting a geographic area, someone acting as "bagman" would take funds from the person acting as the "safehouse" and deposit funds into the traditional banking system, causing interstate wire communications, and laundered the proceeds by various means, including movement through nominee company bank accounts and investment in cryptocurrency exchanges.

7. It was part of the conspiracy that **ROBERT LOUIS SANCHEZ** traveled to targeted geographic areas on multiple trips around the United States in furtherance of the conspiracy, acting sometimes as a "courier," collecting cash payments from elderly victims in person, and sometimes in the role of "safehouse," collecting and guarding fraud proceeds from couriers throughout the course of a trip to hand off to the "bagman." This included but was not limited to trips to the Western District of Kentucky in both September 2020 and February 2021 where **ROBERT LOUIS SANCHEZ** acted as a "courier" and collected cash payments from victims.

8. It was part of the conspiracy that **PANAMA ABEL DIAZ ADAMES** traveled to targeted geographic areas in furtherance of the conspiracy, acting as a "courier" and collecting cash payments from elderly victims in person, including but not necessarily limited to a trip to Indianapolis, Indiana in May 2021.

9. It was part of the conspiracy that **JAIRO OSTIA ROBERTS** traveled to targeted geographic areas in furtherance of the conspiracy, acting as a "courier" and collecting cash payments from elderly victims in person, including but not necessarily limited to a trip to Indianapolis, Indiana in May 2021.

10. It was part of the conspiracy that **MARK ANTHONY PHILLIPS** traveled around the United States in furtherance of the conspiracy, acting as a "bagman" and collecting fraud proceeds that were held by "couriers" and/or those acting in as "safehouse" and depositing the proceeds into

bank accounts, causing interstate wire communications. This included but was not limited to trips to the Western District of Kentucky in both September 2020 and February 2021 where **MARK ANTHONY PHILLIPS** acted as a "bagman." For example, on or about September 25, 2020, in Louisville, Kentucky, **MARK ANTHONY PHILLIPS** deposited $36,240.00 in cash fraud proceeds into a Chase bank account held in the name of Vista Business Solutions.

11. It was part of the conspiracy that **CHRISTOPHER COURCOULACOS** recruited others to join the conspiracy to serve in the "safehouse" and other roles. It was further part of the conspiracy that **CHRISTOPHER COURCOULACOS** directed criminal activity to be carried out by co-conspirators within the United States, using the Signal messaging application and other forms of communication, causing interstate wire communications and international wire communications.

12. It was part of the conspiracy that **PHILLIPE GRAVEL-NADON** made travel arrangements for co-conspirators acting in the "courier" and other roles. It was further part of the conspiracy that **PHILLIPE GRAVEL-NADON** directed criminal activity to be carried out by co-conspirators within the United States, using the Signal messaging application and other forms of communication, causing interstate wire communications and international wire communications.

In violation of Title 18, United States Code, Section 1349.

The Grand Jury further charges:

COUNT 2
*(Money Laundering Conspiracy)*

13. Beginning on a date unknown to the grand jury, but from at least in or about August 2020, and continuing through at least in or about May 2021, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants **MARK ANTHONY PHILLIPS**,

**CARTER REICH**, and **TINA SARNOFF**, together with unindicted co-conspirators, known and unknown to the Grand Jury, did knowingly conspire to commit an offense against the United States, in that: the defendants, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such financial transactions, affecting interstate commerce, which in fact involved the proceeds of wire fraud (in violation of 18 U.S.C. §§ 1343, 1349), a specified unlawful activity, with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

**MANNER AND MEANS**

14. Paragraphs 1 through 12 are incorporated and realleged as if fully set forth herein.

15. The defendants, **MARK ANTHONY PHILLIPS**, **CARTER REICH**, and **TINA SARNOFF**, together with unindicted co-conspirators known and unknown to the Grand Jury, conspired together to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of wire fraud by, among other means, layering funds (i.e. moving money through various accounts for the purpose of concealment), using accounts held in the names of business entities rather than the individuals with true ownership and control of proceeds, and through investment in cryptocurrency exchanges.

16. During the course of the conspiracy, with little variation, the defendants, **MARK ANTHONY PHILLIPS**, **CARTER REICH**, and **TINA SARNOFF**, and their unindicted co-conspirators, followed a similar pattern to launder funds, whereby **MARK ANTHONY PHILLIPS** deposited cash fraud proceeds into accounts held by Vista Business Solutions and controlled by **TINA SARNOFF**, **TINA SARNOFF** transferred proceeds by wire to **CARTER**

**REICH**, and **CARTER REICH** paid the bulk of the proceeds to an overseas cryptocurrency broker called Trigon Trading PTY LTD and a lesser sum to Avery Capital Management, a company owned and controlled by Michael Odell Anderson. At times, **CARTER REICH** made payments directly to Michael Odell Anderson or to others on his behalf.

17. At all relevant times, **MARK ANTHONY PHILLIPS**, was part of the "grandparent scam" described in Count 1. **MARK ANTHONY PHILLIPS** frequently acted as a "bagman," traveling to geographic areas targeted by the "grandparent scam," including to Louisville, Kentucky, in order to collect cash fraud proceeds held by "couriers" and/or the "safehouse" in those locations and then deposit those funds into bank accounts, most often deposits were made into accounts held in the name of Vista Business Solutions and controlled by **TINA SARNOFF**. On occasion, **MARK ANTHONY PHILLIPS** deposited fraud proceeds into his own personal bank accounts.

18. **TINA SARNOFF** organized a Florida cannabis company by the name of Vista Business Solutions on or about May 15, 2019. **TINA SARNOFF** had signature authority on accounts held in the name of Vista Business Solutions, including accounts held at Chase Bank, Wells Fargo Bank, and Bank of America. During the Indictment period, **TINA SARNOFF** allowed **MARK ANTHONY PHILLIPS** to make cash deposits into bank accounts held by Vista Business Solutions.

19. In furtherance of the conspiracy, once cash proceeds were deposited into Vista Business Solutions accounts, **MARK ANTHONY PHILLIPS** would direct **TINA SARNOFF** to wire money to **CARTER REICH**, an attorney, and paid **TINA SARNOFF** for allowing him to use Vista Business Solutions accounts in this manner.

20. As part of the conspiracy, **CARTER REICH** received fraud proceeds, usually from Vista Business Solutions via **TINA SARNOFF**, and occasionally through other channels, including at

times directly from **MARK ANTHONY PHILLIPS**. **CARTER REICH** paid the proceeds to an overseas cryptocurrency broker called Trigon Trading PTY LTD, a Canadian Company called Simply Digital Technologies, and to Michael Odell Anderson, directly or indirectly.

21. The transactions carried out in the course of the conspiracy served to conceal the source, nature, ownership, and control of the fraud proceeds. During the Indictment period, the defendants **MARK ANTHONY PHILLIPS**, **CARTER REICH**, and **TINA SARNOFF**, laundered over $3 million in fraud proceeds.

In violation of Title 18 United States Code, Section 1956(h).

NOTICE OF FORFEITURE

As a result of violating Title 18, United States Code, Section 1343 and 1349, as alleged in this Superseding Indictment, the defendants, **ROBERT LOUIS SANCHEZ, PANAMA ABEL DIAZ ADAMES**, **JAIRO OSTIA ROBERTS**, **CHRISTOPHER COURCOULACOS**, **PHILLIPE GRAVEL-NADON**, and **MARK ANTHONY PHILLIPS**, if convicted, shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly and indirectly, from proceeds traceable to such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

As a result of violating Title 18, United States Code, Section 1956(h), as alleged in the Indictment, the defendants, **MARK ANTHONY PHILLIPS**, **CARTER REICH**, and **TINA SARNOFF**, if convicted, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

[redacted]

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

MAB:CEK

UNITED STATES OF AMERICA v. **ROBERT LOUIS SANCHEZ, MARK ANTHONY PHILLIPS, TINA SARNOFF, CARTER A. REICH, CHRISTOPHER COURCOULACOS, PHILLIPE GRAVEL-NADON, PANAMA ABEL DIAZ ADAMES**, and **JAIRO OSTIA ROBERTS**

## PENALTIES

Count 1: NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release
Count 2: NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release
Forfeiture

## NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.