UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE
CRIMINAL NO: 3:22CR00014-CHB

UNITED STATES OF AMERICA                              PLAINTIFF

V.

PHILLIPE GRAVEL-NADON                                 DEFENDANT

### DEFENDANT'S SENTENCING MEMORANDUM
### AND MOTION FOR NON-GUIDELINE SENTENCE

Defendant Phillipe Gravel-Nadon, by and through counsel, respectfully submits the following sentencing memorandum and motion in support of non-guideline sentence of time-served (about 27 months)[1]. Alternatively, the defendant requests the Court to allow him to serve his sentence in his home country of Canada. The requested sentence, for the reasons stated below, will better fulfill the parsimonious sentencing goals of 18 U.S.C. § 3553(a) than the 87-108 months sentence advised by the sentencing guidelines' arithmetic calculations or the 60-month sentence suggested by JSIN database. The requested sentence will be in line with the new priories of the Justice Department as articulated in Attorney General

---

[1] Defendant has been in continuous custody on these charges since February 27, 2023 (See Notice of Filing at DE 351 and incorporated herein by reference)

Pam Bondi's February 5, 2025, Memorandum[2]. The Memorandum's directive applies to the defendant's situation, mutates mutandis, when it states: "*it will often be prudent to pursue removal from the United States of a low-level investigative target without immigration status, rather than incurring the time and resources associated with criminal prosecution . . . it will rarely be consistent with this policy to pursue foreign arrests and extraditions of targets who may be eligible for safety valve or minimal role adjustment.*"

## APPLICATION OF STATUTORY SENTENCING FACTORS

After *United States v. Booker*, 543 U.S. 220 (2005), the overarching legislative command is that a sentence must be sufficient, but not greater than necessary, to comply with the sentencing goals mandated by Congress: including punishment, respect for the law, and deterrence. *See* 18 U.S.C. § 3553(a). To this end, the Court must consider the recommended guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determine the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines. In applying the § 3553 statutory factors to Mr. Gravel-Nadon's case, a sentence below the guideline range is a just result in this matter given (1) his lack of any serious criminal record, (2) the substantial length of time he has served in harsh conditions in Columbian jails from his arrest to the time of prosecution (3) his substantial and extraordinary

---

[2] Total Elimination of Cartels and Transnational Criminal Organizations available at https://www.justice.gov/ag/media/1388546/dl?inline

acceptance of responsibility and cooperation with the government, and (4) the denial of substantial prison benefits he will experience in the Bureau of Prison custody because of his immigration detainer.

The defendant is charged with a serious but non-violent theft offense which involved no violence, drugs, or guns. He has no prior criminal history except for a 2011 misdemeanor conviction from New York. His total criminal history score is 1. He is a loving father and devoted husband. He joined Canada's Cadet Program at age 12 and received an honorable discharge from the Canadian Navy in 2012. His involvement in this case is truly an aberration in an otherwise law-abiding life. He is in good health. He has the necessary education and training to make a decent and honest living as he did for many years before getting involved in the instant offense.

The defendant is a foreign national who was extradited from Columbia to the United States on an Interpol warrant. He was taken into custody by Columbia and remained in Columbia custody for over 17 months from February 27, 2023, through July 18, 2024. This has been confirmed by the Office of International Affairs of the Prosecutor General of Columbia.  See DN 351-1.  Both Columbian and US laws require that any time served in Columbia custody be credited to the defendant.

**Conditions of Custody in Columbia Justify a Downward Variance**. According to available public information, Colombian jails are generally considered to be significantly worse than American jails, with widespread issues like extreme overcrowding, inadequate sanitation, poor healthcare, violence between inmates, and

poor training of prison staff, making conditions in Colombian prisons often harsh and life-threatening. Mr. Gravel-Nadon's harrowing account of his 17 months in Columbia custody is detailed in his attached letter. "They barely fed us enough to survive, and I lost around 18 pounds [during the first month]". The facilities infested with "powerful drug lords, gang member, and narco-terrorist." The Court is requested to consider a downward variance for the harsh custodial conditions the defendant endured while in Columbian custody.

**Immigration Detainer and Non-Citizen Status**. The Department of Homeland Security filed an immigration detainer against the defendant on July 18, 2024. The detainer (attached as an exhibit) states that "upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make admissibility determination." As an inmate with an immigration detainer, he will be classified as a high risk and will not be able to participate in many prison benefits. Once released and deported to Canada, the defendant will not be eligible for entry into the United States under the exclusion grounds of 8 U.S.C. § 1182.

**First Step Act Eligibility and Security Classification.** BOP policy has been in flux as to whether noncitizens are eligible to receive earned time credits. As the Court knows the First Step Act incentivizes incarcerated individuals to complete "recidivism reduction programming or productive activities" by providing earned time credits. But individuals with unresolved immigration status have historically been

precluded from applying earned time credits under the First Step Act. Additionally, the ICE detainer will also affect the defendant's security classification and placement. Instead of being placed at a minimum-security camp like most non-violent white-collar criminal defendants, he will be placed in a higher security facility with a more restrictive environment and less friendly inmates. As a non-citizen he will likely face a harsher period of incarceration compared to his similarly situated co-defendants who are US citizens.

**Mr. Gravel-Nadon should be allowed to serve his sentence in his home country.** The United States of America has a bilateral treaty and transfer agreement with Canada[3]. The agreement permits the transfer of prisoners from countries in which they had been convicted and sentenced of crimes to their home countries. If the Court is inclined to impose a prison sentence beyond time-serves, the defendant requests that he should be allowed to serve his sentence in his home country of Canada. The Court also has the power to impose a sentence of probation or home confinement to be served abroad.

In 2008, then-District of Columbia Circuit Court Judge Kavanaugh affirmed a district court's sentence of probation to be served in Belgium in *United States v. Gardellini*, 545 F.3d 1089, 1091 (D.C. Cir. 2008). Defendant Gardellini pled guilty to filing a false income tax return in violation of 26 U.S.C. § 7206(1). The government

---

[3] https://www.justice.gov/criminal/criminal-oia/list-participating-countriesgovernments

had appealed the sentence as substantively unreasonable under *United States v. Booker and Gall v. United States*. 543 U.S. 220 (2005); 552 U.S. 38 (2007).

**The Need for the Sentence Imposed**

(A)     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

"Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake." *United States v. Stern*, 590 F. Supp.2d 945, 956-57 (N.D. Ohio 2008). "[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id.* (quoting *Gall*, 128 S. Ct. at 599).

A defendant who deserves harsh punishment but receives a simple slap on the wrist does nothing to promote respect for the law.  The same is true for a defendant who deserves leniency but is sentenced harshly.

**Collateral Consequences as Punishment and Deterrence**. Numerous Courts of Appeals have recognized the importance of considering the collateral consequences a conviction may have on a particular defendant when determining a sentence. *See e.g.*,

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007). Many of these collateral consequences are statutorily mandated. In fact, one federal court has noted that "[t]here are nationwide nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons." *United States v. Nesbeth*, No. 15-CR-18 (FB), 2016 WL 3022073, at *5 (E.D.N.Y. May 24, 2016). The court further opined, "[t]here is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences." *See id.* at *1. There is no reason to believe that he would be spared these consequences if he moved to a different country.

In many white-collar cases, general deterrence can be achieved without a lengthy period of incarceration. This is so because as the Sentencing Commission has recognized, the certainty of the punishment for white collar offenses is more important than the duration. See U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing 56 (2004), available at https://tinyurl.com/ussc15 (noting that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger percentage of 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence"). And probation and home confinement are effective in promoting general deterrence in white collar cases where the public visibility of the conviction causes disastrous reputational harm. See Elizabeth Szockyj, Imprisoning White Collar Criminals, 23 S. Ill. U. Law J. 495, 498

(1999) (noting that a "conspicuous electronic monitoring device. . .would serve as a constant reminder to co-workers, business associates, and the public of the offense and penalty").

### Need to Protect the Public

The public is at an exceedingly low risk of harm from Mr. Gravel-Nadon. It is unlikely that he will ever live in the United States but as this case proves one does not have to live in the United States to cause harm to its citizens. Nevertheless, the potential harm calculation must be adjusted to account for the defendant's removal from this country after his release.

### To Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

As stated above, Mr. Gravel-Nadon does not need additional educational or vocational training, medical care, or other correctional measures.

### Unwarranted Sentencing Disparities.

18 U.S.C. § 3553(a)(6) instructs the Court to impose a sentence that "avoids unwarranted disparities among defendants with similar records who have been found guilty of similar conduct". While the defendant is not similarly situated to his co-defendants primarily because of his status as a foreign national, a sentence of time-served will not be an unwarranted disparity. According to JSIN the median length of imprisonment for defendants with similar guidelines range was 60 months. The requested sentence of time-served, though not exactly in the middle of the range, is likely to be the only sentence of 24 months in in the JSIN database for defendants

with similar guidelines range.

**Need to provide restitution**. Mr. Gravel-Nadon's ability to pay restitution will entirely depend on his ability to earn sufficient income as he has no assets which can be used to satisfy the restitution judgment in the amount of $963,290. He has expressed a strong desire to pay restitution which is unable to do while in custody. A sentence of time-served will accomplish this sentencing goal better than any other sentence.

### Mr. Gravel-Nadon's Cooperation and Extraordinary Acceptance of Responsibility Warrants a Downward Variance.

Mr. Gravel-Nadon has demonstrated substantial and extraordinary acknowledgment of guilt and acceptance of responsibility. He has been interviewed by the Department of Justice prosecutors and IRS investigators on multiple occasions and has agreed to continue his cooperation even after his sentencing. This is a concrete measure of his sincere remorse and efforts to mitigate the harm his actions have caused.

### Totality of Circumstances Favor a Below-Guidelines Statutory Sentence

U.S.S.G. § 5K2.0 allows sentence reduction based upon unique combinations of factors, including those presented here. *United States v. Broderson*, 67 F.3d 452, 458 (2nd Cir. 1995) (downward departure where Sentencing Guidelines did not adequately account for "confluence of circumstances" that individually might not warrant departure).

## CONCLUSION

Mr. Gravel-Nadon's felony requires no minimum prison term. "Congress did not only envision, but accepted, the possibility that some defendants found guilty . . . would receive no jail time at all." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007). (upholding sentence of one day in prison followed by three years' supervised release where statutory range for drug trafficking was 0-20 years). A sentence of time-served would be an appropriate exercise of the Court's sentencing discretion, and consistent with the principle of parsimony expressed in § 3553(a) - "sufficient, but not greater than necessary," to serve all the appropriate purposes and concerns which go into the fashioning of a fair and just sentence.

WHEREFORE, Mr. Gravel-Nadon prays that this Motion will be granted, that the Court will impose the requested sentence, and grant all other relief the Court deems appropriate.

Respectfully submitted,

/s/ Khalid A. Kahloon
Khalid A. Kahloon
600 West Main Street
Suite 500
Louisville, KY 40202
502-261-7200
Email: kahloon@msn.com

<u>CERTIFICATE OF SERVICE</u>

I certify that on June 6, 2025, I electronically filed the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Khalid A. Kahloon</u>
Khalid A. Kahloon