UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                                                   CRIMINAL NO. 3:22-CR-14-CHB

PHILLIPE GRAVEL-NADON                                              DEFENDANT

**SENTENCING MEMORANDUM**
*- Filed Under Seal -*

The United States, by counsel, Assistant United States Attorney, Corinne E. Keel, files its sentencing memorandum for the sentencing of Phillipe Gravel-Nadon, currently scheduled for June 12, 2025, at 9:00 a.m. in Louisville, Kentucky.

### A. **STATEMENT OF FACTS**

The United States agrees with the facts as presented in the presentence investigative report for the defendant. [Presentence Investigation Report, DN 348 at ¶¶ 11-25.]

### B. **GUIDELINES**

The presentence report correctly calculates the defendant's total offense level, as adjusted for his acceptance of responsibility. [*Id.* at ¶ 45.]

### C. **CRIMINAL HISTORY**

The United States agrees with the presentence report that the defendant falls into criminal history category I. [*Id.* at ¶ 51.]

### D. **SENTENCING FACTORS AND RECOMMENDATION**

The plea agreement, in this case, provides for the United States to recommend a sentence at the low end of the sentencing guidelines, a fine at the lowest end of the guideline range, and up

to a three-point reduction in offense level for the defendant's acceptance of responsibility. The agreement leaves an opening for Gravel-Nadon to argue for a sentence below the guidelines range. Further, the parties agreed that the defendant should be ordered to pay restitution to the victims, in the amount of $963,290.

This Court must ultimately affix a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)     the need for the sentence imposed:
    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     to afford adequate deterrence to criminal conduct;
    (C)     to protect the public from further crimes of the defendant; and
    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)     the kinds of sentences available;
(4)     the kinds of sentence and the sentencing range established for--
    (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(5)     any pertinent policy statement--
(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

The United States proposes that a low-end guidelines sentence is appropriate and adequately serves the interest of justice in this case. In making this recommendation, the United States has considered the defendant's acceptance of responsibility in the present case, along with other factors. The Defendant is seeking a significant further downward departure and a sentence well below the calculated guideline—of time served or approximately 27 months. The United States objects to such departure for the reasons discussed below.

**I. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The nature and circumstances of this offense are particularly serious for several reasons. The grandparent scam charged is a broad and sophisticated, involving dozens of participants and coordination by criminals across continents. Like other similar fraud schemes, this grandparent scam targets particularly vulnerable senior victims and utilizes particularly manipulative social engineering, causing victims to believe their loved ones are in peril. Grandparent scams like this one create a sense of fear and urgency, effectively preying on victim panic to convince them to hand over thousands of dollars before they realize they're being scammed. This particular grandparent scam has the added layer of in-person cash pick-ups, where prior iterations of the same scam ask victims to ship money to fraudsters. This criminal "innovation" has the effect both of making the scam seem more legitimate—making victims believe a courier has arrived to expedite the payment of money to aid their loved ones—and leaving victims with even greater fear once they understand they've been victimized because they now know a criminal has visited their home and knows where they live.

While the United States agrees that Mr. Gravel-Nadon has expressed genuine remorse for his criminal conduct and has accepted responsibility, this—combined with a sparse criminal history—cannot entirely negate his major role in an extremely serious criminal conspiracy. This kind of sophisticated fraud requires a business-like level of coordination and organization. Gravel-Nadon was one of the key people to provide that coordination during the course of the charged conspiracy, by directing the actions of others and making travel arrangements for them. Moreso than many of his codefendants, Gravel-Nadon's role gave him reason to better understand the nature and scope of the scheme. Not only did Gravel-Nadon act like a corporate manager in

directing the crimes of others, he gave them advice to help avoid detection by law enforcement—like swapping rental cars and deleting text messages. [See DN 348 at ¶ 24.]

The suggestion that Mr. Gravel-Nadon is the kind of "low-level investigative target"—unworthy of prosecution or extradition—contemplated in the Attorney General's Memorandum on Cartel enforcement, is also misguided. Not only is this Defendant ineligible for a "minimal role adjustment," his offense contributed to over $3 million in losses and warranted enhancements for the impact on a large number (USSG §2B1.1(b)(1)(I)) of vulnerable victims (USSG §3A1.1(b)(1)) and for the aggravating role of acting as a manager or supervisor of others (USSG §3B1.1(b)). Further, the Memorandum referenced by the defense provides guidance to Department of Justice *employees* in contemplating *charging* decision and provides no constraints—nor should it have bearing—on how the Court should sentence. Clearly, the United States saw Gravel-Nadon's conduct as serious enough to warrant federal charges and extradition from Colombia to the United States to answer for his conduct.

## II. The Purposes and Impact of the Sentence Imposed

A guideline sentence in this case would serve to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "afford adequate deterrence to criminal conduct[,]" as contemplated in 18 U.S.C. § 3553(a)(2)(A)&(B). These purposes of sentencing are import where, as here, the crime is particularly serious, has had widespread victim impact, and is of a type that is prevalent and difficult to stop. These purposes are even more important with respect to this defendant, a foreign fraudster operating at a high level in an international scam, because it is so rare that similarly situated defendants are brought into the United States and held to account. Even though the United States gives credence to the defense argument that Gravel-Nadon has already been adequately deterred through this prosecution from

future crimes, general deterrence must be considered, as well. The United States further opposes the downward departure the defendant seeks for the sake of "avoiding unwarranted sentence disparities" as contemplated in 18 U.S.C. § 3553(a)(6). In this case, the defendants had a range of knowledge and roles within the overall scheme and a range of resulting sentences reflect those differences. Gravel-Nadon's sentence should not fall on the lower end of that range.

## CONCLUSION

For all of the foregoing reasons, a low-end guideline sentence adequately reflects the seriousness of the charged offenses, while taking into account the total circumstances of the present case. It is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing, in accordance with 18 U.S.C. § 3553(a). The United States respectfully requests the Court sentence the defendant in accordance with the recommendation in his plea agreement.

Respectfully submitted,

Kyle G. Bumgarner
United States Attorney

*/s/ Corinne E. Keel*
Corinne E. Keel
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky 40202
Phone: (502) 625-7041

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel.

*/s/ Corinne E. Keel*
Corinne E. Keel
Assistant U.S. Attorney